UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MALE DIXON a.k.a. JAMES KING,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN BARBARA VON BLACKENSEE,<br><br>Defendant. | Civil Action No. 17-CIV-7359 (NSR)<br><br>Hon. Nelson S. Roman<br><br>**RESPONSE TO DEFENDANT'S<br>MOTION FOR RECONSIDERATION** |

## RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION

### INTRODUCTION

On June 11, 2019, this Court correctly held that Plaintiff could maintain a *Bivens* action against Defendant arising under the First and Fifth Amendments. Now, Defendant seeks to relitigate that holding by arguing that (1) the Court misconstrued the relevant law surrounding *Bivens* and (2) failed to properly consider the issue of qualified immunity. But, the Court should deny Defendant's motion for reconsideration for two reasons. First, Defendant's arguments are improperly before the Court because their motion for reconsideration attempts to relitigate issues that the Court previously decided in its June 11 order. Second, Defendant's substantive arguments are misguided—as they were before—because (1) *Bivens* applies to Plaintiff's remaining First and Fifth Amendment claims and (2) qualified immunity is otherwise inapplicable.

### STANDARD OF REVIEW

An order denying a motion to dismiss is neither a judgment nor an order from which a party may appeal under Rule 60(b) of the Federal Rules of Civil Procedure. *See Iacovacci v. Brevet Holdings, LLC*, No. 18CV8048, 2019 WL 2992165, at *1 (S.D.N.Y. July 9, 2019); *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 396–97 (S.D.N.Y. 2018). As a

result, Defendant may only seek reconsideration and reargument under Local Rule 6.3(a). *See Iacovacci v. Brevet Holdings, LLC*, 2019 WL 2992165, at *1.

"A motion for reconsideration and reargument under Local Rule 6.3(a) 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Id*. (quoting *Shrader v. CSX Transp.*, Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted)). "Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York." *Langsam v. Vallarta Gardens*, No. 08 Civ. 2222 (LAP), 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009) (citation omitted).

Furthermore, "[a] motion for reconsideration and reargument is not an opportunity to relitigat[e] old issues, present[ ] the case under new theories, secur[e] a rehashing on the merits, or otherwise tak[e] a second bite at the apple." *Iacovacci v. Brevet Holdings, LLC*, 2019 WL 2992165, at *2 (internal quotation omitted) (alteration in original). Thus, "Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dietrich v. Bauer*, 198 F.R.D. 397, 399 (S.D.N.Y. 2001).

## ARGUMENT

**I.  A Motion for Reconsideration Is an Improper Vehicle for Challenging the Court's Order**

Defendant argues that the Court misunderstood the case law surrounding *Bivens* and that it failed to bar Plaintiff's claims under the doctrine of qualified immunity. (ECF No. 37 at 3–7.) But, these arguments were already raised during the briefing at the motion-to-dismiss stage. As an

2

exemplar, the cases that Defendant cited in its motion for reconsideration are also—broadly—the same cases that Defendant cited in her prior motion-to-dismiss briefings. *See* (ECF No. 25 at 7–8, 10); (ECF No. 37 at 4–8.) As such, Defendant's motion improperly uses a motion for reconsideration as a vehicle to get a rehearing on the issues. *See Iacovacci v. Brevet Holdings, LLC*, 2019 WL 2992165, at *1; *Dietrich v. Bauer*, 198 at 399.[1]

But, Defendant argues that the Court overlooked controlling decisions in both the *Bivens* and qualified-immunity context, and that—had the Court properly considered them—it would have dismissed Plaintiff's First and Fifth Amendment claims. (ECF No. 37 at 3–7.) Unfortunately, this argument mischaracterizes the Court's order. The Court *did* consider the very decisions that Defendant now argues are controlling. It merely disagreed with Defendant's interpretation.

The Court spent fourteen pages reasoning why Defendant could be sued in her individual capacity for Plaintiff's First and Fifth Amendment claims. (ECF No. 8–21.) It then spent another six pages reasoning why *Bivens* applied. *See id*. at 23–28. In certain instances, the Court cited the *very same cases* that Defendant now argues it overlooked. (*See* ECF No. 35 at 23–28) (discussing *Ziglar v. Abassi*, 137 S. Ct. 1843 (2017)); (ECF No. 37 at 7–8) (citing *Ziglar* throughout).

It is clear precedent in this District that "[a] motion for reconsideration and reargument is not an opportunity to relitigat[e] old issues . . . secur[e] a rehashing on the merits, or otherwise tak[e] a second bite at the apple." *Iacovacci v. Brevet Holdings, LLC*, 2019 WL 2992165, at *2

---

[1] Furthermore, even if Defendant's citation to *Azzara v. McFarland* constitutes a controlling decision that the Court theoretically overlooked, the Court should not consider it relating to a motion for reconsideration. (*See* ECF No. 37 at 8.) Within the context of a motion for reconsideration, a "controlling decision" can only come from either the U.S. Supreme Court or the Second Circuit. *See Langsam v. Vallarta Gardens*, 2009 WL 2252612, at *2. Thus, *Azzara* cannot constitute a "controlling decision" for motion-for-reconsideration purposes. *See id*.

(internal quotation omitted) (alteration in original). If Defendant disagrees with the Court's interpretation of *Bivens* or qualified immunity, the proper channel for that disagreement is an appeal. It is not—as Defendant has done here—bootstrapping Defendant's arguments to a new motion to get a rehearing on issues that the Court already decided. *See id*. at *1–2. As a result, the Court should dismiss Defendant's motion as improper.

## II. *Bivens* Is Available for Plaintiff's First and Fifth Amendment Claims

Defendant argues that Plaintiff's First and Fifth Amendment claims do not surpass "the Supreme Court's strong caution against recognizing new types of *Bivens* claims." (ECF No. 37 at 8.) Instead, Defendant argues that the creation of any potential relief for Plaintiff's claims should be left to the legislature. *See id*. But, Defendant's arguments are misguided—a caution is not a bar and deferment is not abrogation.

*Bivens* creates an implied cause of action—similar to 42 U.S.C. § 1883—for plaintiffs to obtain compensatory damages from federal officials for violating their constitutional rights. *See Ziglar* 137 S. Ct. at 1854. But, unlike § 1983, *Bivens* is a limited remedy—only being available for specific circumstances under the Fourth, Fifth, and Eighth Amendments. *See id*. at 1854–55. Furthermore, at present, the Supreme Court has clarified that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 675 (2009)). Moreover, "[t]he Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative actions by Congress.'" *Id.* at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). That being said, despite *Bivens*'s expansion being a "disfavored judicial activity," the Court left open the distinct possibility that *Bivens* could be expanded in the future. *See id*. at 1857–58.

4

The expansion of *Bivens* to a new context is a two-step process. First, a court must determine if the requested relief does, in fact, result in *Bivens*'s expansion. *See id*. at 1858–59. If it does, then a court must ask "'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id*. at 1857 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)).

Defendant appears to take issue with *Ziglar*'s second prong—namely who should decide? Specifically, Defendant argues that the Court should have deferred to Congress regarding whether relief is available for Defendant's alleged First and Fifth Amendment violations. (ECF No. 37 at 8.) In other words, Defendant's argument appears to boil down to one of discretion—did the Court correctly find that no "special factors" weighed against expanding *Bivens* to cover Plaintiff's remaining claims? *Carlson*, 446 U.S. at 18.

In this instance, the Court correctly expanded *Bivens* to cover Plaintiff's claims because the right at issue goes to the very heart of the Fifth Amendment. At a base level, a prisoner has a fundamental right to access the courts. *See Lewis v. Casey*, 518 U.S. 343, 350–51 (1996) (collecting cases). That right is not absolute, but it certainly exists and—existing through the Constitution—"the judiciary is clearly discernable as the primary means through which these rights may be enforced."[2] *Davis v. Passman*, 442 U.S. 228, 241 (1979).

Furthermore, as the Court correctly noted in its motion-to-dismiss order, there is no statutorily available avenue for Plaintiff to vindicate this right. (ECF No. 35 at 27.) Here, Plaintiff

---

[2] "If [these rights] are incorporated into the Constitution, independent tribunals of justice will consider themselves in a peculiar manner the guardians of those rights; they will be an impenetrable bulwark against every assumption of power in the Legislative or Executive; they will be naturally led to resist every encroachment upon rights expressly stipulated for in the Constitution by the declaration of rights." *Davis*, 442 U.S. at 241–42 (quoting 1 Annals of Cong. 439 (1789)).

claims that his state-court case was dismissed after Defendant refused to allow his appearance at a hearing upon the state court's order to do so. (ECF No. 9 at 4.) As such, doctrines such as res judicata bar his present opportunity for relief in the state-court case absent the Court undoing the state court's judgment—if that was indeed possible. (ECF No. 35 at 27.) The only relief, then, is compensatory relief under *Bivens*. This case, then, appears to be the exact type of case that *Ziglar* foreshadowed when it stated that "if equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations." *Ziglar*, 137 S. Ct. at 1858.[3]

Here, failure to provide Plaintiff compensatory relief would allow federal-prison officials to arbitrarily and routinely violate state-court orders in civil cases, violating a core Fifth Amendment right in the process. (ECF No. 35 at 27) ("Not allowing a route to civil damages would be akin to the Court passing a blanket immunity for such officials in their individual capacities.").[4] As a result, the Court should affirm its earlier holding that *Bivens* applies to Plaintiff's remaining First and Fifth Amendment claims.

### III.   Qualified Immunity Does Not Apply to Plaintiff's Remaining *Bivens* Claims

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."

---

[3] Defendant argues, though, that "special factors counselling hesitation"—as *Ziglar* outlined—foreclose expanding *Bivens* to Plaintiff's remaining claims. Examples of these special factors include the "burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself." *Id*. But, the case at hand is the exact type of case that *Ziglar* appears to create monetary damages for—those that are necessary to redress past harms and deter future violations. *See id*. As such, the Court was correct in holding that no "special factors" restricted it in providing Plaintiff a *Bivens* remedy for his remaining claims. (ECF No. 35 at 27–28.)
[4] For the same reason that Plaintiff's Fifth Amendment claim falls under *Bivens*, his First Amendment claim does as well. The right to access the courts is not merely a Fifth Amendment right, but a First Amendment right "to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983).

*Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (internal quotation marks omitted); *see Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015).

In this District, a court will generally "look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir.2009). But, that being said, the "absence of a decision by [the Second Circuit] or the Supreme Court directly addressing the right at issue will not preclude a finding that the law was clearly established" so long as preexisting law "clearly foreshadow[s] a particular ruling on the issue," *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir.2000) (internal quotation marks omitted).

Furthermore, concerning reasonableness, it is not necessary that a given action has previously been found unlawful—"an officer might lose qualified immunity even if there is no reported case 'directly on point.'" *Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *3 (S.D.N.Y. Jan. 11, 2019) (quoting *Ziglar* 137 S. Ct. at 1866–67) (internal quotation omitted).

Defendant argues that the rights forming the basis of Plaintiff's remaining claims were not clearly established because neither the Second Circuit nor Supreme Court explicitly acknowledged them. (ECF No. 37 at 5–9.) But, Defendant is mistaken that a right can only be clearly established upon its explicit acknowledgment. Importantly, so long as preexisting law "clearly foreshadow[s] a particular ruling," a court will treat it as clearly established for qualified-immunity purposes. *Tallier*, 280 F.3d at 84. Here, in Plaintiff's case, the doctrine substantive due process clearly foreshadows the right that Defendant violated.

Substantive due process is "intended to secure the individual from the arbitrary exercise of the powers of government." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quoting *Bank of*

7

*Columbia v. Okely*, 17 U.S. 235, 244 (1819)0. This protection from arbitrary action stretches all the way back to the Magna Carta. *See* Frederick Mark Gedicks, *An Originalist Defense of Substantive Due Process: Magna Carta, Higher-Law Constitutionalism, and the Fifth Amendment*, 58 EMORY L.J. 585, 621, 640 (2009). Furthermore, at the time of our Country's independence, the Magna Carta's bar on arbitrary action "had become an integral part of the colonial argument against . . . [the] regulation of the colonial police power." *Id*. at 621; *see also id.* at 640 (explaining that "by 1790 when Madison set out to draft the Fifth Amendment and the rest of the Bill of Rights . . . [the] Magna Carta, was understood to include a residual guarantee of substantive liberty against arbitrary actions of government . . . ."). Moreover, the protection from arbitrary government action has since been routinely cited in Supreme Court cases. *See Okely*, 17 U.S. at 244; *Hurtado v. California*, 110 U.S. 516, 527 (1884); *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

Here, the central issue is Defendant's refusal to honor a state-court order with no supporting reason for doing so. (ECF No. 9 at 4); (ECF No. 35 at 17.) In other words, the issue here is arbitrariness, as opposed to the refusal in and of itself. As a result, the refusal falls squarely within the doctrine of substantive due process and, thus, that of clearly established law.

Defendant also argues that—even if her refusal to honor the state-court order violated clearly-established law—her reliance on the U.S. Marshals guidelines evidences a reasonable belief that her actions were lawful. (ECF No. 37 at 5–7.) But, Defendant is mistaken for two reasons.

First, violating a clearly established doctrine that goes back to the Thirteenth Century under the pretense that agency guidelines—with no force of law—allowed her to do so is not an objectively-reasonable position. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (stating

that enforcement guidelines do not carry the force of law for *Chevron* purposes); Gedicks, *supra* at 621, 640.

Second, it does not appear that the U.S. Marshals guidelines condone Defendant's arbitrary refusal to honor a state-court order. True, the guidelines appear to state that transferring a federal prisoner pursuant to a state-court order is permissive, as opposed to required. *See* U.S. Marshals Serv. Pol'y Directives § 9.13(B)(3). But, the same section of the guidelines states that the section is "intended to expedite local prosecutions at reduced costs to local, state and federal agencies." *Id*. at § 9.13(B)(2). While arbitrarily denying a state-court order may reduce a federal agency's costs, it is hard to see how doing so expedites a local prosecution in this instance. Thus, without any explanation as to why Defendant ignored the state-court order, the Court should not find Defendant's actions objectively reasonable—even under the guidelines that Defendant supposedly relied on.

## CONCLUSION

For the aforementioned reasons, the Court should affirm its prior judgment and deny Defendant's motion for reconsideration.

Dated:   October 7, 2019
         New York, New York

                                                       Respectfully submitted,

                                                       s/ David Russell
                                                       David Russell
                                                       ARNOLD & PORTER KAYE SCHOLER LLP
                                                       250 West 55th Street
                                                       New York, NY 10019
                                                       (212) 836-7498
                                                       david.russell@arnoldporter.com