


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MALE DIXON a/k/a JAMES KING,

Plaintiff,

-against-

BARBARA VON BLACKENSEE – WARDEN OF THE OTISVILLE CORRECTIONAL FACILITY, *in her individual capacity*,

Defendant.

No. 17-cv-7359 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Male Dixon a/k/a James King ("King" or "Plaintiff"), a *pro se*[1] incarcerated inmate at FCI Berlin, commenced this action on or about September 25, 2017. (Complaint, ("Compl."), ECF No. 1.) On February 5, 2018, Plaintiff filed his Second Amended Complaint. (Second Amended Complaint, ("SAC"), ECF No. 9.) In this action, Plaintiff brought claims against Barbara Von Blackensee ("Defendant" or "Blackensee"), a former Warden of Otisville Correctional Facility, in her individual and official capacity, pursuant to 42 U.S.C. § 1983 and under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

By Opinion and Order dated June 11, 2019 ("the June 11, 2019 Order"), the Court granted in part and denied in part Defendant's Motion to Dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* ECF Nos. 24, 35.) All of Plaintiff's claims against Defendant Blackensee in her official capacity and under Section 1983 were dismissed as a matter of law. All claims against Blackensee in her individual capacity under *Bivens* were dismissed,

[1] Plaintiff has retained counsel for the limited purpose of opposing the instant motion. (*See* Order Granting *Pro Bono* Counsel, ECF No. 41.)

except for Plaintiff's Fifth and First Amendment claims for money damages.

On June 17, 2019, Blackensee filed a motion for reconsideration of the Court's June 11, 2019 Order pursuant to Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3. (ECF No. 36.) For the reasons stated below, Blackensee's motion for reconsideration is GRANTED in part and DENIED in part.

**BACKGROUND**

The Court assumes familiarity with the facts and allegations in this case, as well as the procedural background of this case. *See Dixon v. Von Blackensee,* No. 17-CV-7359 (NSR), 2019 WL 2433597, at *1 (S.D.N.Y. June 11, 2019). The central allegation in this case is that Blackensee violated Plaintiff's constitutional rights by arbitrarily defying a state court transport order. As a result of the June 11, 2019 Order, the only remaining claims are Plaintiff's Fifth and First Amendment claims for money damages under *Bivens*.

**LEGAL STANDARD**

A motion for reconsideration may be granted for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6).[2] While the decision to grant or deny such a motion rests within "the sound discretion of the district court," "such relief should be granted only in extraordinary circumstances." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citing *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)); *see also In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation omitted), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp.*, No. 05-CV-3430,

[2] Plaintiff contends that Rule 60(b) is inapplicable to the June 11, 2019 Order because a decision denying a motion to dismiss is not appealable. But, as Defendant correctly notes, an order denying qualified immunity as a matter of law is immediately appealable. *See Behrens v. Pelletier*, 516 U.S. 299, 307, 116 S. Ct. 834, 839, 133 L. Ed. 2d 773 (1996) ("[A]n order rejecting the defense of qualified immunity at . . . the dismissal stage . . . is a "final" judgment subject to immediate appeal) (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)); *see also Lawyer v. Cota*, 764 Fed. App'x 65, 67 (2d Cir. 2019) (affirming the grant of a Rule 60(b) motion seeking reconsideration of an order denying qualified immunity at the motion-to-dismiss stage).

2006 WL 1423785, at *1 (2d Cir. 2006) (reconsideration of a Court's previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.").

In this district, motions for reconsideration are governed by Local Civil Rule 6.3, and the standard for granting a motion for reconsideration "is strict." *McCloud v. Perez*, No. 17-CV-1827(AJN)(KNF), 2018 WL 5818103, at *1 (S.D.N.Y. Aug. 17, 2018) (quoting *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995)). Indeed, reconsideration will generally be denied "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Pac. Life Ins. Co. v. Bank of New York Mellon*, No. 17-CV-1388 (KPF), 2018 WL 1871174, at *1 (S.D.N.Y. Apr. 17, 2018) (quoting *Shrader*, 70 F.3d at 257).

Accordingly, a motion for reconsideration "is not a vehicle for . . . presenting the case under new theories . . . or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation and citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 0690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)) (in moving for reconsideration, "a party may not advance new facts, issues, or arguments not previously presented to the Court."). Nor is such a motion "an occasion for repeating old arguments previously rejected . . ." *RSM Prod. Corp. v. Fridman*, No. 06-CV-11512, 2008 WL 4355406, at *2 (S.D.N.Y. Sept. 23, 2008) (internal quotation marks omitted).

**DISCUSSION**

As to the claims that survived Defendant's motion to dismiss, the Court found that Plaintiff had adequately alleged constitutional violations sounding in the Fifth Amendment's due process

clause and the First Amendment. (*See* June 11, 2019 Order at 8–21). Defendant does not appear to challenge the Court's opinion on that score. Instead, Defendant argues that the Court erred in its *Bivens* analysis by overlooking controlling law. Defendant also contends that the Court overlooked her argument that she is entitled to the defense of qualified immunity. Plaintiff counters that this motion is improperly before the Court because it attempts to relitigate issues that the Court previously decided in its June 11, 2019 Order. The Court addresses these points in turn.

**I. Application of *Bivens***

As detailed in the June 11, 2019 Order, the Court found that Plaintiff's Fifth and First Amendment claims could appropriately proceed under a *Bivens* theory. (*See* June 11, 2019 Order at 23–28.) The Court applied the two-step test set forth by the Supreme Court in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Under this test, a court must first decide whether a claim "presents a new *Bivens* context." *Id.* at 1859. If so, the court must then proceed to a "special factors" analysis and decide "who should decide whether to provide for a damages remedy, Congress or the courts[.]" *Id.* at 1857. The Court found that Plaintiff's claims did present new *Bivens* contexts, and therefore turned to the "special factors" analysis. The Court considered: (i) the constitutional, rather than statutory, bases for Plaintiff's claims for relief; (ii) separation of powers principles; (iii) the existence of any other avenues for redress; (iv) whether equitable remedies would be more appropriate; and (v) whether there was any other cause for hesitation, that is, any reason to "doubt the efficacy or necessity of a damages remedy as part of the system of enforcing the law." *Ziglar*, 137 S.Ct. at 1858. After a fulsome discussion of each factor, the Court held that, should Plaintiff's claim survive motion practice and yield liability on the merits, under *Bivens*, Plaintiff could recover monetary damages.

Defendant argues that redress should not be made available to Plaintiff under *Bivens* in these circumstances. In particular, Defendant takes issue with the Court's analysis as it pertained

to the first factor: the constitutional bases for Plaintiff's claims. Defendant is correct to point out that all *Bivens* claims will necessarily be constitutional. To clarify, the Court's discussion of the distinction between statutory and constitutional claims was intended to highlight the unique context in which *Bivens* claims are analyzed. As the Supreme Court has pointedly observed, "the question of who may enforce a *statutory* right is fundamentally different from the question of who may enforce a right that is protected by the Constitution." *Davis v. Passman*, 442 U.S. 228, 241, 99 S. Ct. 2264, 2275, 60 L. Ed. 2d 846 (1979) (emphasis in original). It was misleading for the June 11, 2019 Order to pronounce that this "weighs heavily in favor of granting *Bivens* redress," when in actuality it merely set the stage for the separation of powers analysis that followed.

Nevertheless, the Court's conclusion still stands: for the other myriad reasons discussed at length in the June 11, 2019 Order, and in consideration of all of the salient "special factors," there was "no reason for the Court[] to hesitate in providing a damages remedy in this context." (June 11, 2019 Order at 28.) This conclusion was reached despite recognition that a high bar exists for breaking new *Bivens* ground. (*See id.* at 7, 23) (acknowledging that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity") (citing *Ziglar*, 137 S. Ct. at 1857.) Though the bar to do so is high, the Supreme Court left open the distinct possibility that the *Bivens* doctrine could develop further. *See Ziglar*, 137 S. Ct. at 1857–58 ("[I]f equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations.").

Defendant has not presented any "controlling decisions or data that the court overlooked." Defendant cites one other district court decision that declined to extend *Bivens*' damages remedy against a BOP official in a personal capacity, citing Congress's legislation in the area of the litigation of prisoners' rights through the Prison Litigation Reform Act ("PLRA"). But this Court rejected such a deferential approach, and unambiguously declined to "[r]elegat[e] the vindication

of Constitutional rights to Congress" in this specific situation. (June 11, 2019 Order at 26–27.) Furthermore, "[c]ontrolling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York." *Langsam v. Vallarta Gardens*, No. 08 Civ. 2222 (LAP), 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009). Therefore, Defendant has not demonstrated the "extraordinary circumstances" necessarily to justify reconsideration on this issue. *See Aczel*, 584 F.3d at 61 (2d Cir. 2009).

## II. Qualified Immunity

Defendant argues that qualified immunity bars Plaintiff's claims against her, and notes that this argument was raised in her briefing in support of her motion to dismiss. (*See* Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), at 8 ("Def.'s MOL"), ECF No. 25; Reply Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), at 4 ("Def.'s Reply MOL"), ECF No. 28.) The Court's June 11, 2019 Order did not squarely address the issue of qualified immunity but allowed two claims to survive, thereby denying Defendant's qualified immunity defense *sub silentio*. As such, the Court will reexamine its reasoning and address the points raised by Defendant.

### a. Requirements for Defense of Qualified Immunity

The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar*, 137 S. Ct. at 1866 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230

(2d Cir. 2014) (internal quotation marks omitted). To determine whether a right was clearly established, the Court looks to: (1) "the specificity with which a right is defined"; (2) the existence of Supreme Court or the applicable circuit court case law on the subject; and (3) whether it was "objectively reasonable" for the defendant to believe the conduct at issue was lawful. *See id.* at 231; *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013).

In this Circuit, "a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein*, No. 11 CV. 7450(PKC)(HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) and quoting *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)). "[T]he plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* Thus, the qualified immunity defense is "typically addressed at the summary judgment stage," because it "usually depends on the facts of the case, . . . making dismissal at the pleading stage inappropriate." *Woods v. Goord*, No. 01-CV-3255, 2002 WL 731691, at *10 (S.D.N.Y. Apr. 23, 2002) (citing *King v. Simpson*, 189 F.3d 284, 289 (2d Cir. 1999)).

**b. Application to Plaintiff's Fifth Amendment Claim**

Such is the case here. As the June 11, 2019 Order explains, Plaintiff adequately alleged that Blackensee violated his constitutional Fifth Amendment due process rights by defying the transport order, thereby denying Plaintiff meaningful access to the courts. (*See* June 11, 2019

Order at 8–19.) Thus, the first element has been met, and the remaining question before the Court is whether the contours of that right was "clearly established" as to the claims asserted here.

In this case, the contours of the right to meaningful access to the courts were sufficiently clear and supported by Supreme Court precedent. The June 11, 2019 Order discussed how, while prisoners do not have a general right to demand to be present in judicial proceedings, when a court issues an order for a prisoner's presence, the prison must have a legitimate penological reason to refuse to honor the order. The Court—citing the Judiciary Act, the *habeas corpus* statutes, and related case law—observed that even for civil matters, a prisoner's custodian has a duty to produce that prisoner when a federal court issues an order for the prisoner's appearance. Furthermore, the Court found this duty likewise exists with respect to state court orders, and reasoned that there was "no equitable or jurisprudential reason why the principles derived from cases involving federal writs for inmates' civil litigation would not apply to state writs/orders for civil litigation." (June 11, 2019 Order at 14.) The Court also explained that it is well-settled that there is no risk of breaking federal custody when honoring a state writ/transport order.

Ultimately, the central legal question is: Did Blackensee violate the Fifth Amendment's guarantee of due process when she unilaterally and arbitrarily denied the transport order? As discussed in the June 11, 2019 Order, while the case law on point is sparse, the limited decisions on this issue all side in Plaintiff's favor: Prison wardens may only defy court orders where they have demonstrated legitimate interests of state government. (*See* June 11, 2019 Order at 17–18) (citing *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254 (1987); *Matter of Warden of Wisconsin State Prison*, 541 F.2d 177 (7th Cir. 1976); and *Hernandez v. Whiting*, 881 F.2d 768, 770 (9th Cir. 1989)).

To be clear, "an officer might lose qualified immunity even if there is no reported case 'directly on point.'" *Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *3 (S.D.N.Y. Jan. 11, 2019) (quoting *Ziglar* 137 S. Ct. at 1866–67) (internal quotation omitted). So long as preexisting law "clearly foreshadow[s] a particular ruling," a court will treat it as clearly established for qualified-immunity purposes. *Tellier v. Fields*, 280 F.3d 69, 84 (2d. Cir. 2000); *see also United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'"). And as Plaintiff notes, the Constitution's protection against arbitrary government action has been routinely cited in Supreme Court cases. *See, e.g., Hurtado v. California*, 110 U.S. 516, 527 (1884) (explaining that the principles of due process "were intended to secure the individual from the arbitrary exercise of the powers of government") (quoting *Bank of Columbia v. Okely*, 17 U.S. 235, 244 (1819)); *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government"). In sum, it was apparent that Blackensee lacked the legal justification to unilaterally and arbitrarily defy a court order.

As to whether it was "objectively reasonable" for Defendant to believe the conduct at issue was lawful, such a determination is necessarily fact-based. *See Woods*, 2002 WL 731691 at *10. As the June 11, 2019 Order observed, Defendant offered no reason why she defied the transport

order.[3] (June 11, 2019 Order at 17.) But, the inquiry does not end there. The June 11, 2019 Order continued:

> It could very well be that the prison's penological or administrative interests will outweigh Plaintiff's rights. Such a showing has not yet been made. And the Court could easily fathom facts where a prisoner's interests exceed the prison's legitimate penological interests. . . . At this juncture, the Court accepts that the prison gave *no* reason for its action. That is an insufficient basis for it to deny a prisoner's rights.

(*Id.* at 18–19.) Defendant may prevail on qualified immunity defense as the case progresses; but at this juncture, Plaintiff "is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436 (2d Cir. 2004). Because it does not appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," *id.* at 436, the qualified immunity defense must be denied without prejudice to renew at a later stage.

**c. Application to Plaintiff's First Amendment Claim**

Plaintiff's opposition to the instant motion does not refute Defendant's qualified immunity defense with respect to his First Amendment claim. As such, Plaintiff's opposition to this argument is considered waived. *See, e.g.*, *Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17-CV-5846 (VSB), 2018 WL 4759754, at *5 (S.D.N.Y. Sept. 30, 2018) (collecting cases holding that arguments are conceded if not opposed). Defendant's motion is therefore granted insofar as it seeks to dismiss Plaintiff's First Amendment claim on the ground of her qualified immunity defense.

## CONCLUSION

For the foregoing reasons, Defendant's motion for reconsideration is GRANTED in part

---

[3] Though Defendant relies on the U.S. Marshals guidelines, this justification was considered and rejected in the June 11, 2019 Order. (June 11, 2019 Order at 12) ("[W]hile . . . U.S. Marshals' [guidelines] are insightful, they are not authority for assessing constitutional rights."). Furthermore, it does not appear that the U.S. Marshals guidelines condone Defendant's arbitrary refusal to honor a state-court order.

and DENIED in part. It is granted only insofar as the Court will dismiss Plaintiff's First Amendment *Bivens* claim. Plaintiff's Fifth Amendment *Bivens* claim remains. The parties are directed to confer and submit a case management plan (attached) by May 11, 2020. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 36. The Clerk of the Court is further directed to update Plaintiff's address on the docket to reflect his transfer to FCI Berlin (*See* Letter dated January 24, 2020, ECF No. 53.) Defendant is directed to mail a copy of this Opinion and Order to Plaintiff at his FCI Berlin address, and to file proof of service on the docket.

Dated: March 26, 2020
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge